UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NIKOLAS ABBOTT,

        Plaintiff,                        Hon. Janet T. Neff

v.                                         Case No. 1:19-cv-969

BERRIEN COUNTY, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion to Dismiss. (ECF No. 30). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be granted in part and denied in part.

## BACKGROUND

The following allegations are contained in Plaintiff's Amended Complaint. (ECF No. 23). Plaintiff was convicted in Van Buren County of an unspecified crime, however, because Plaintiff's father is the Van Buren County Sheriff, Plaintiff was incarcerated in a neighboring jurisdiction. Specifically, Plaintiff was incarcerated in the Berrien County Jail from January 30, 2018, through October 26, 2018.

As of January 30, 2018, Plaintiff was "significantly disabled as the result of a gun accident." Specifically, Plaintiff had to be fed by way of a gastrostomy tube and also had a tracheostomy tube inserted in his neck.

After arriving at the Berrien County Jail, Plaintiff applied to "serve as a worker within the Jail's inmate work programs." Inmates who perform such work earn "good time" which reduces the length of their sentence. Plaintiff's request was denied "because of his 'face' and his 'condition.'" No attempt was made to provide Plaintiff with an accommodation which would enable him to participate in the jail's inmate work program.

On or about February 21, 2018, Plaintiff's left eye became infected. Plaintiff "immediately" notified jail personnel of this circumstance, but Plaintiff was denied medical treatment. On March 5, 2018, the infection in Plaintiff's left eye "ruptured, releasing blood and pus." While Plaintiff was prescribed an antibiotic, jail personnel failed "on numerous days" to administer this medication causing Plaintiff's infection to persist. On several occasions between March 9, 2018, and March 15, 2018, jail personnel communicated with Plaintiff's outside care providers. Jail personnel assured Plaintiff's care providers that Plaintiff's eye was improving and, therefore, it was unnecessary for Plaintiff's care providers to meet with Plaintiff.

By "early April" 2018, the infection in Plaintiff's left eye again "filled up with blood and pus." Jail personnel failed, however, to provide Plaintiff with medical treatment. While Plaintiff was again prescribed an antibiotic on May 4, 2018, jail personnel failed

-2-

to administer such to Plaintiff. On May 7, 2018, the infected mass in Plaintiff's left eye again "ruptured and drained blood and pus, leaving an open wound larger than the diameter of a pencil." Jail personnel still "refused to treat the infection" and instead "made demeaning and humiliating comments" regarding Plaintiff's appearance and disability. On May 18, 2018, Plaintiff was prescribed an antibiotic to treat his eye infection, but jail personnel again refused to administer such. Specifically, between May 18, 2018, and October 26, 2018, Plaintiff was provided only four doses of his prescribed antibiotic.

During Plaintiff's incarceration in the Berrien County Jail, jail personnel failed to provide Plaintiff with the bandages, dressings, and cleaning supplies Plaintiff required to properly maintain his gastrostomy tube and tracheostomy. As a result, Plaintiff experienced "extreme pain, bleeding, as well as the indecent necessity of being wrapped in bloody, wet, and odorous bandages and dressings for weeks."

Because of his inability to ingest solid food orally, Plaintiff was "prescribed" a diet consisting of eight cans daily of an unspecified product. On "numerous" days, however, Plaintiff was provided only two cans of this product. Plaintiff complained that he was not being provided sufficient nutrition. On at least eight occasions, jail personnel responded to Plaintiff's complaints by providing him egg sandwiches, boiled eggs, or peanut butter sandwiches, despite knowing that Plaintiff was allergic to eggs and peanuts.

Plaintiff initiated this action against Berrien County and Berrien County Sheriff L. Paul Bailey asserting various constitutional claims as well as claims under the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA). Defendants now move to dismiss Plaintiff's official capacity claims against Sheriff Bailey as well as Counts II, III, IV, V, VII, and VIII of Plaintiff's Amended Complaint. Plaintiff has responded to Defendants' motion. While Defendants have requested oral argument in this matter, the Court finds that such is unnecessary. *See* L.Civ.R. 7.2(d).

## **LEGAL STANDARD**

A claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The Court need not accept as true, however, factual allegations which are "clearly irrational or wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

As the Supreme Court has held, to avoid dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and

plausibility of 'entitlement to relief.'"  *Id.*  As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" – "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

## ANALYSIS

### I.  Official Capacity Claims Against Defendant Bailey

All eight counts in Plaintiff's Amended Complaint are asserted against Berrien County.  Additionally, Counts I and VI are asserted against Sheriff Bailey in both his individual and official capacity.  Defendant Bailey moves to dismiss Plaintiff's official capacity claims.

Counts I and VI are both asserted under 42 U.S.C. § 1983. Official capacity claims are "in all respects other than name, to be treated as a suit against the [governmental] entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Accordingly, where a party asserts a claim against a governmental entity, an official capacity claim against one of its agents is superfluous and must, therefore, be dismissed. *See, e.g., Foster v. Michigan*, 573 Fed. Appx. 377, 390 (6th Cir., July 16, 2014); *Faith Baptist Church v. Waterford Twp.*, 522 Fed. Appx. 322, 327 (6th Cir., Apr. 11, 2013).

Plaintiff's argument to the contrary is unpersuasive and the two cases on which Plaintiff's argument relies are easily distinguishable. In *Lorenzo v. Bailey*, 2012 WL 253150 (W.D. Mich., Jan. 26, 2012), the court declined to dismiss an official capacity claim asserted against an individual defendant despite the fact that the plaintiff had also asserted a claim against the governmental entity of which he was an agent. *Id.* at *5-6. The justification for this determination was that the individual defendant "is not merely an employee of the governmental entity being sued but instead a medical doctor under contract to the County, and the official capacity suit is premised on the provision of medical care uniquely within the expertise of the individual doctor rather than the County generally." *Id.* at *6. Plaintiff has failed to allege facts supporting any such (or similar) distinction in this matter. Rather, Plaintiff's official capacity claims against Sheriff Bailey and his claims against Berrien County are, for all practical purposes, identical.

The other case on which Plaintiff relies is even less persuasive. In *Skellett v. Washington*, 2019 WL 6974733 (W.D. Mich., Dec. 20, 2019), the court dismissed, as duplicative, the official capacity claims against several individual defendants, but permitted the official capacity claims against "the highest ranking named official" to proceed. *Id.* at *6. In *Skellett*, however, the plaintiff did not assert a claim against the State of Michigan or any governmental entity. *See Skellett v. Washington*, 1:19-cv-703, ECF No. 1 (W.D. Mich.). Thus, the court was not faced with the question whether an official capacity claim against an individual defendant was redundant to a claim asserted against a governmental entity. The court nevertheless dismissed as redundant the official capacity claims against all but one of the individual defendants, underscoring the principal that when a plaintiff is ultimately seeking relief from the governmental entity, claims against multiple defendants are superfluous. Such is certainly the case here. Accordingly, the undersigned recommends that Plaintiff's official capacity claims against Defendant Bailey be dismissed.

## II.   Counts IV and V

Counts IV and V allege discrimination in violation of the ADA and RA, respectively. Both claims are premised on the allegation that Defendants refused to allow Plaintiff to participate in the jail's work program because of his disability. Plaintiff further alleges that because he was improperly denied the ability to participate in the jail's work program, he was denied the ability to earn "good time" credits which would have reduced the length of his sentence. Defendants argue that Plaintiff lacks

-7-

standing to pursue these claims.  The Court is not persuaded.

Defendants argue that "Plaintiff's own Complaint and public records indicate that Plaintiff received a 95-day reduction in his sentence in this case." (ECF No. 31, PageID.382). Defendant failed to cite to any portion of Plaintiff's amended complaint in support of this argument and the Court discerns nothing in Plaintiff's amended complaint that supports such. Rather, Plaintiff argues that had he been permitted to participate in the jail's work program and earn good time credits, he would have been released from jail almost two months sooner than was otherwise the case. (ECF No. 23, PageID.318, 319). As for the argument that "public records" reveal that Plaintiff did, in fact, receive a 95-day reduction in his sentence, Defendants have failed to identify or cite to the "public records" in question. Accordingly, Defendants' argument that Plaintiff lacks standing to assert these claims is rejected.

Title II of the ADA provides that "no qualified individual with a disability shall by reason of such disability be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Jones v. City of Monroe, Michigan*, 341 F.3d 474, 477 (6th Cir. 2003) (quoting 42 U.S.C. § 12132). The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for receipt of services or the participation in programs or activities provided by a public entity." *Jones*, 341 F.3d at 477 (quoting 42 U.S.C. § 12131).

The RA provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a). Claims asserted under the RA are analyzed similarly to claims asserted under the ADA. *See Lee v. City of Columbus*, 636 F.3d 245, 250 (6th Cir. 2011); *McPherson v. Mich. High Sch. Athletic Ass'n,* 119 F.3d 453, 459 (6th Cir.1997) (en banc) ("[t]he analysis of claims under the [ADA] roughly parallels those brought under the Rehabilitation Act"). While both provisions prohibit discrimination against the disabled, the RA, unlike the ADA, expressly prohibits discrimination *solely* on the basis of disability. *See Lee*, 636 F.3d at 250.

To state a claim for discrimination under the ADA, Plaintiff must allege that: (1) he has a disability; (2) he was otherwise qualified; and (3) was nevertheless excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of his disability. *See Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). The allegations concerning Counts IV and V of Plaintiff's amended complaint easily clear this threshold. The undersigned recommends, therefore, that Defendants' motion to dismiss Counts IV and V of Plaintiff's amended complaint be denied.

### III. Counts II and III

Counts II and III allege that Defendants failed to provide him with adequate nutrition and proper medical care in violation of the ADA and RA, respectively. Defendants argue that these claims must be dismissed because such fail to state a claim under the ADA or RA. The Court disagrees.

As Defendants recognize, the ADA and RA "afford disabled persons legal rights regarding access to programs and activities enjoyed by all, but these statutes do not provide a general federal cause of action to challenge the sufficiency of the medical treatment of their underlying disabilities." *Bonds v. Southern Health Partners, Inc.*, 2016 WL 1394528 at *6 (E.D. Ky., Apr. 6, 2016) (collecting cases); *Powell v. Michigan Department of Corrections*, 2019 WL 1033991 at *8 (W.D. Mich., Mar. 5, 2019) ("Failing to attend to the medical needs of disabled prisoners is not an ADA or RA violation").

As Plaintiff counters, however, the analysis changes if his claim is not simply that he was denied adequate medical care, but rather that he was denied adequate medical *because of* his disability. As the Supreme Court has recognized, "the alleged deliberate refusal" by jail officials to accommodate an inmate's "disability-related needs in such fundamentals as mobility, hygiene, medical care" can violate the ADA. *See United States v. Georgia*, 546 U.S. 151, 157 (2006); *see also*, *Powell*, 2019 WL 1033991 at *7-8 (recognizing, in the ADA and RA context, a distinction between allegations that a disabled person was denied adequate medical treatment and allegations that a disabled person was denied adequate medical treatment *because of* his disability). Plaintiff has

-10-

alleged facts sufficient for a reasonable juror to conclude that not only was Plaintiff denied adequate medical treatment, but that the deprivation in question was because of his disability. Accordingly, the undersigned recommends that Defendants' motion to dismiss Counts II and III of Plaintiff's amended complaint be denied.

### IV. Counts VII and VIII

Counts VII and VIII allege retaliation in violation of the ADA and RA, respectively. Defendants argue that these claims must be dismissed because they are merely inadequate conditions of confinement claims which are properly asserted under the Eighth Amendment. The Court is not persuaded.

To state a claim for retaliation under the ADA or RA, Plaintiff must allege that: (1) he was engaged in protected conduct; (2) Defendants were aware of the protected conduct; (3) Defendants took adverse action against him; and (4) there exists a causal connection between the protected conduct and the adverse action. *See M.L. v. Williamson County Board of Education*, 772 Fed. Appx. 287, 291 (6th Cir., May 24, 2019). Plaintiff alleges that he requested from Defendants adequate nutrition and proper medical care. Plaintiff further alleges that in retaliation for making such requests, Defendants retaliated by refusing to provide adequate medical care and serving him foods to which Defendants knew Plaintiff was allergic. Plaintiff's allegations satisfy the aforementioned standard. Accordingly, the undersigned recommends that Defendants' motion to dismiss Counts VII and VIII of Plaintiff's amended complaint be denied.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendants' Motion to Dismiss (ECF No. 30) be granted in part and denied in part. Specifically, the undersigned recommends that Plaintiff's claims asserted against Defendant Bailey in his official capacity be dismissed, but that otherwise Defendants' motion be denied.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: August 3, 2020                        /s/ Phillip J. Green
                                            PHILLIP J. GREEN
                                            United States Magistrate Judge